IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHEILA A. WOOD                    :         CIVIL ACTION
                                  :
     v.                           :
                                  :
BETHELEHEM AREA VOCATIONAL         :         NO. 12-4624
TECHNICAL SCHOOL, et al.          :

MEMORANDUM

Dalzell, J.                                      June 17, 2013

We consider here defendants' motion to dismiss Sheila
Wood's complaint.  Wood alleges that her former employer,
Bethlehem Area Vocational Technical School ("BAVTS"), as well as
several individual and institutional defendants, violated her
rights under the First and Fourteenth Amendments by changing her
conditions of work and then firing her in retaliation for her
public comments about potential asbestos exposure in BAVTS.
Comp. ¶¶ 17 - 36.

Wood's complaint includes eight counts: five counts
brought under 42 U.S.C. § 1983, one for wrongful termination,
one for intentional infliction of emotional distress, and one
for civil conspiracy.  We have jurisdiction over Wood's § 1983

claims pursuant to 28 U.S.C. § 1331 and over Wood's supplemental

jurisdiction state law claims pursuant to 28 U.S.C. § 1367.

## I. **Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), a defendant may move

the Court to dismiss a complaint on the ground that it fails to

"state a claim upon which relief can be granted". A moving

defendant bears the burden of proving that the plaintiff has

failed to state a claim for relief, <u>see</u> Fed. R. Civ. P.

12(b)(6), <u>see also</u> <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir.

2005).

As the Supreme Court held in <u>Bell Atlantic Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662

(2009), in order to survive a Rule 12(b)(6) motion, "a

complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its

face'", <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at

570). A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged",

<u>Iqbal</u>, 556 U.S. at 678.

As our Court of Appeals has explained post-Twombly and Iqbal, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the district courts must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). We thus begin by reciting the facts as Wood has pled them.

## II. **Facts**

According to her complaint, Wood worked for BAVTS from October 2, 2006 until November 4, 2010.  Comp. ¶¶ 17-18.  Wood avers that before she raised concerns about asbestos exposure at BAVTS, she received the same treatment as other employees.  Id. at 23.

The potential asbestos exposure at BAVTS allegedly raised significant public concern, causing "many members of the public to attend meetings of the BAVTS' Joint Operating Committee" and spurring substantial media coverage.  Id. at ¶

22.  Plaintiff says that she was active in the effort to address asbestos exposure: she "appeared at numerous meetings of Defendant BAVTS' Joint Operating Committee and made statements to staff and members of the public regarding the asbestos exposure problem at BAVTS," and she "associated with . . . other persons to effectuate a response to the concerns raised by the asbestos exposure."  Id. at ¶¶ 24, 26.  She alleges that Richard Crosby, a fellow staff member, joined her in these efforts.  Id. at ¶¶ 25-27.

According to Wood, "[d]isciplinary actions were taken against both the Plaintiff as well as Mr. Crosby, including, with respect to the Plaintiff, a ten day suspension without pay from February 17, 2010 to March 2, 2010."  Id. at ¶ 28.  After her suspension, Wood says "her duties [were] significantly altered" in that "[h]er access to equipment was made more restrictive, she was precluded from access to a master key which was crucial for her to perform her job, and she was provided with inferior equipment."  Id. at ¶ 29.  She alleges that she "was set up to fail", and thus "[i]n June of 2010, [Wood] was given an unsatisfactory job performance evaluation."  Id. at ¶¶ 29-30.

Some time after July 2, 2010 Wood received a hearing pursuant to Cleveland Board of Educ. v. Loudermill, 470 U.S. 532 (1985). Wood alleges that at this hearing "none of the administrators present including Defendant Kline [sic] and Defendant Williams could articulate one single instance of misconduct", id. at ¶ 32. She also claims that "[n]o documentation was provided by the Administration to support the nebulous charges made at the 'Loudermill' hearing, and, in fact, much of the purported 'documentation' was physically produced after the purported 'Loudermill' hearing", id. at ¶ 33.

BAVTS suspended Wood on August 16, 2010, id. at ¶ 35, and the school fired her on November 4, 2010, id. at ¶ 18. BAVTS employees said the school fired Wood because she violated the Internet use policy and performed her job unsatisfactorily. Comp. ¶ 19.

In pleading the facts in her complaint, Wood mentions only two individual defendants by name -- Brian Williams and Sandra Klein. Williams was the Executive Director for BAVTS, and Klein was the "Supervisor of Lifelong Learning - Technology". Id. at ¶¶ 4, 6. Wood also brings this action against individual defendants Dr. Irene Gavin, the "Supervisor of Instruction - Principal" at the school; John Haney, the

technology coordinator; and Sharon Stack, the chair of the Joint Operating Committee for BAVTS, a committee Wood alleges is responsible for the day to day operations at BAVTS. Id. at ¶¶ 5, 7-8. Wood also sues "John/Jane Does 1-X," who are "employees or officials of one or more of the" institutional defendants.

Wood sues five institutional defendants: Bethlehem Area Vocational Technical School, Bethlehem Area Vocational Technical School Authority, Bethlehem Area School District, Northampton Area School District, and Saucon Valley School District. Id. at ¶¶ 11-15.

The defendants move to dismiss the complaint in its entirety.

## III. Discussion

Because Wood brings most of her claims under 42 U.S.C. § 1983, we note at the outset that under § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Thus, in order to state a § 1983

claim, a plaintiff must allege facts sufficient to allow the
court to draw a reasonable inference that a person acting under
color of state law has violated a right secured by the
Constitution or the laws of the United States.  See, e.g.,
Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

Before considering the defendants' arguments that all
claims should be dismissed against all defendants, we will first
consider the validity of Wood's claim that her constitutional
rights under the First and Fourteenth Amendments were violated.
Because we will hold that Wood has pled facts sufficient to
state a plausible claim that some defendants violated these
rights, we will consider whether the action should nevertheless
be dismissed against some defendants.

### A.    Count I - 42 U.S.C. § 1983, Violations of Plaintiff's Rights Under the First and Fourteenth Amendments

#### 1.    First Amendment Rights

Wood alleges that the defendants "depriv[ed] her [of
her] Constitutionally protected right to free speech, to
petition the government for a redress of grievances, freedom of
association . . . and other rights as guaranteed by the First .
. . Amendment[]."  Comp. ¶ 48.

In <u>Watters v. City of Philadelphia</u>, 55 F.3d 886 (3d Cir. 1995), our Court of Appeals laid out the standard for a public employee's claim that she was fired in retaliation for engaging in protected First Amendment activity:

> First, plaintiff must show that the activity in question was protected . . . Second, plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action . . . Finally, defendant may defeat plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken even in the absence of the protected conduct.

<u>Id.</u> at 892.

The defendants argue that Wood has failed to claim a First Amendment violation because "the complaint fails to allege facts that would establish a causal connection between any purported protected speech and negative employment action." Def. MTD at 6. They thus argue both that Wood's speech was not protected and that there was no causal link between her speech and her firing.

The Supreme Court has explained that in order for a public employee's speech to be protected under the First Amendment that speech "must be on a matter of public concern" and "the employee's interest in expressing herself on this

matter must not be outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Waters v. Churchill, 511 U.S. 661, 668 (1994) (internal quotations omitted). See also, e.g., Watters, 55 F.3d at 892 (quoting Waters). Furthermore, the speech must not be made as part of an employee's job duties. Garcetti v. Ceballos, 547 U.S. 410, 423 (2006).

The defendants do not contend that the BAVTS's interests as an employer outweighed Wood's interest in speaking out about asbestos exposure. Instead, they argue that Wood's speech was not "on a matter of public concern" because it did not reach beyond BAVTS. Def. MTD at 6-7.

In Baldassare v. State of New Jersey, 250 F.3d 188, 195 (3d Cir. 2001), our Court of Appeals relied on Connick v. Myers, 561 U.S. 138 (1983), in explaining that "[a] public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community", and this analysis requires a consideration of "the content, form, and context of the activity in question." Id. at 195 (internal quotations omitted). In Holder v. City of Allentown, 987 F.2d 188 (3d Cir.

1993), our Court of Appeals reasoned that "[t]he form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed", id. at 195.

Here, Wood argues that the content of her speech -- the danger of asbestos contamination in a public school -- was a matter of public concern, Pl. Resp. at 11, and we agree. Judge Rambo reached a similar conclusion in denying a motion to dismiss in Smith v. Central Dauphin School Dist., 419 F. Supp. 2d 639 (E.D. Pa. 2005), where she found "speech involv[ing] allegations of health and safety problems with Defendant School District's buildings" to be "a topic of great concern to the community". Id. at 647. Moreover, we reject defendants' argument that "there is no specific allegation that the speech reached beyond BAVTS", Def. MTD at 7. The complaint alleges that "many members of the public" attended "meetings of the BAVTS' Joint Operating Committee", and that the issue received "substantial coverage in the local and regional media." Comp. ¶ 22. According to the complaint, Wood "appeared at numerous meetings of Defendant BAVTS' Joint Operating Committee and made

statements to staff and members of the public regarding the asbestos exposure problem at BAVTS", id. at ¶ 24.

Wood's speech was thus not "confined merely to the public office where the speaker is employed" under Holder. It is also clear that discussing asbestos exposure fell outside of Wood's duties as a technology assistant, and she has alleged as much. See Comp. ¶ 27 ("The advocacy by Plaintiff and Mr. Crosby was well beyond their scope of their job responsibilities and was motivated by a genuine concern for the students, staff, and members of the public who may have been exposed to asbestos"). At this stage, Wood has met her burden of demonstrating that the activity was protected under Watters and Ceballos.

The defendants next argue that Wood has failed to allege a causal connection between the activity and the firing. They contend "[w]hile the existence of causation is an issue of fact, the element of causation must be alleged to state a claim upon which relief may be granted." Def. MTD at 7-8. Wood has alleged causation. In her complaint she avers that "the reasons given by one or more of the Defendants for her termination were pretextual" and "the real reasons for her termination were because she had raised legitimate concerns about asbestos

exposure to both the staff and students of BAVTS."  Comp. ¶¶ 20-
21.

We also reject defendants' contention that Wood has
not "alleged concrete facts to support her claim" of causation.
Def. MTD at 8.  As our Court of Appeals noted in Lauren W. ex
rel. Jean W. v. DeFlaminis, 480 F.3d 259 (3d Cir. 2007), a
plaintiff may prove causation necessary for a § 1983 retaliation
claim by showing "an unusually suggestive temporal proximity
between the protected activity and the allegedly retaliatory
action".  Id. at 267.  Wood alleges that "[p]rior to her raising
concerns about asbestos exposure, the Plaintiff had been treated
in a manner similar to other employees during her tenure at
BAVTS," and "after the Plaintiff appeared at numerous meetings .
. . and made statements . . . regarding the asbestos exposure
problem . . . she was subjected to severe disciplinary actions"
-- including termination.  Comp. ¶¶ 23-24.  Wood has thus pled
facts which make a sufficiently plausible claim of retaliation
to survive a motion to dismiss.

## 2.  Fourteenth Amendment Right

Wood alleges that her due process right under the
Fourteenth Amendment was violated, Comp. ¶ 48, and defendants

counter that the complaint does not state a claim for a deprivation without due process of Wood's property right to continued employment. Def. MTD at 8. The defendants do not challenge that Wood had a property right in continued employment, but they argue that she received the process that was due: "Wood was given a Loudermill hearing prior [to receiving] discipline. Further, after her termination, Wood was given a Local Agency hearing. Therefore, Wood received due process." Id. According to Wood, the pre-discipline hearing did not meet the standards established in Loudermill, 470 U.S. 532 (1985): "The purported 'Loudermill' hearing was a sham, in that it did not provide Plaintiff with either notice of what conduct was being alleged to justify her suspension without pay, and ultimate termination, nor afford her an opportunity to respond prior to suspending her without pay." Comp. ¶ 34.[1] Wood thus argues that she experienced a due process violation that

---

[1] We note that in their motion to dismiss the defendants suggest that Wood's complaint alleges that the hearing "was not precipitated by any notice", Def. MTD at 9, but this is not the case. Wood avers that "[o]n July 2, 2010, the Plaintiff was given notice of a purported 'Loudermill' hearing." Comp. ¶ 31. Wood's concern regarding notice instead appears to be that the information she received during the hearing about the terminable conduct was "nebulous" and the administrators present could not "articulate one single instance of misconduct." Comp. ¶¶ 32-33.

13

"cannot be cured by a post-termination hearing", Pl. Resp. at 14.

In Loudermill, the Supreme Court held that public employees who could be discharged only for cause had a Fourteenth Amendment due process right to a pre-termination hearing. Loudermill, 470 U.S. at 535, 545. The Supreme Court explained that though the hearing "need not be elaborate", it must provide "notice and an opportunity to respond", including "oral or written notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story." Id. at 545-46. In Schmidt v. Creedon, 639 F.3d 587 (3d Cir. 2011), our Court of Appeals found that an employee had a right to a Loudermill hearing before being suspended without pay, id. at 595, and it held that, absent extraordinary circumstances, due process requires a pre-suspension hearing even where an employment agreement provides post-termination grievance procedures. Id. at 597.

In Gniotek v. City of Philadelphia, 808 F.2d 241 (3d Cir. 1986), our Court of Appeals evaluated whether a Loudermill hearing had provided adequate notice. Id. at 244. The Court explained that "Notice is sufficient . . . if it apprises the

14

vulnerable party of the nature of the charges and general evidence against him," id.  This standard conforms to the requirement in Loudermill that a hearing provide an employee with "an explanation of the employer's evidence."  Loudermill, 470 U.S. at 546.  Evaluating the sufficiency of the notice provided at a Loudermill hearing requires a fact-intensive assessment.  Here, Wood alleges that during her hearing administrators gave her only nebulous information about her misconduct and did not point to a single specific instance of misconduct.  These facts, taken as true, could show that the hearing did not meet the due process standards established in Loudermill, and elaborated in Gniotek, and we will thus not dismiss her Fourteenth Amendment claim at this stage.

**B.**     **Motion to Dismiss Claims Against All Defendants**

In addition to opposing the counts individually, the defendants move to dismiss all claims against all defendants on the basis of the defendants' status and the nature of the allegations, and we consider those arguments before turning to the remaining claims.

Specifically, the defendants contend that we should dismiss all claims against individuals because (1) there are no

specific facts alleged tying the individuals to the causes of
action, (2) the defendants are entitled to qualified immunity,
(3) the complaint does not show that punitive relief may be
appropriate, and (4) the naming of ten unknown defendants is
excessive and prejudicial to the defendants.  Def. MTD at 20-23.
The defendants move to dismiss the claim against all
institutional defendants on Monell grounds, Def. MTD at 12-14,
and against a subset of the other institutional defendants --
Bethlehem Area Vocational-Technical School Authority, Bethlehem
Area School District, Northampton Area School District, and
Saucon Valley School District -- because there is no employment
relationship between Wood and any of these defendants.  Def. MTD
at 24.

### 1. Wood Has Alleged Specific Facts Tying Defendants Williams and Klein To The Alleged Misconduct

The defendants argue that Wood's complaint "is
entirely devoid of any specific facts tying any Individual
Defendant to any cause of action.  Moreover, there is not even a
specific allegation of wrongdoing against any Individual
Defendant.  All of the allegations are general statements or
legal conclusions pertaining to how Wood believes she was
wronged." Def. MTD at 20.

We disagree. The complaint does assert that two specific individual defendants took part in the alleged deprivation of constitutional rights. In describing the Loudermill hearing, Wood argues that "none of the administrators present including Defendant Kline [sic] and Defendant Williams could articulate one single instance of misconduct." Comp. ¶ 32.

If, as the complaint alleges, the hearing was insufficient to protect Wood's due process rights, and if it was used as a vehicle for her firing in retaliation for protected First Amendment activity, then Klein and Williams would have participated in a deprivation of Wood's constitutional rights.

Wood also alleges that Williams served as the Executive Director of the BAVTS during the relevant period and that Klein served as the "Supervisor of Lifelong Learning - Technology" while Wood was employed as a technology assistant. Comp. ¶¶ 4, 6, 17. The factual assertion regarding their participation in the pre-termination hearing, particularly in light of the averments about their roles with BAVTS, gives rise to a reasonable inference that Williams and Klein are liable for the misconduct alleged, and we will not grant the motion to dismiss with respect to these individuals.

Wood has failed, however, to allege any facts whatsoever with respect to the other individual defendants -- Dr. Irene Gavin, John Haney, Sharon Stack, and defendants "John/Jane Does 1-X", and she has fallen far short of alleging the personal involvement necessary to sustain a § 1983 claim. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). We will therefore grant the motion to dismiss as to these defendants. This dismissal also resolves the defendants' prejudice argument with respect to the unnamed defendants.

### 2. Williams and Klein Are Not Entitled To Qualified Immunity At This Stage

Wood asserts her § 1983 claims against the individual defendants in their individual, rather than official, capacities, see Comp. ¶ 87 (seeking "punitive damages . . . against the individual Defendants in their individual capacities"). Defendants argue that we should dismiss all claims against individuals sued in their individual capacities because these actors enjoy qualified immunity. Def. MTD at 21.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step process for analyzing claims of qualified immunity: first, the district court was to consider the threshold question of whether, "[t]aken in the light most

favorable to the party asserting the injury . . . the facts
alleged show the officer's conduct violated a constitutional
right", id. at 201, before considering whether the right was
clearly established.  Though the Supreme Court has since relaxed
the sequencing for conducting this inquiry, see Pearson v.
Callahan, 555 U.S. 223 (2009), we have nevertheless determined
above that, taking all the facts in Wood's complaint as true,
she has stated a plausible claim of violations of her First and
Fourteenth Amendment rights.

    We must next consider whether those rights were
clearly established.  Qualified immunity protects government
officials "insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known", Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982).  See also Pearson v. Callahan, 555 U.S.
223, 231 (2009) (same).  As our Court of Appeals has explained,
"[a] right is 'clearly established' for qualified immunity
purposes only if '[t]he contours of the right' are 'sufficiently
clear that a reasonable official would understand that what he
is doing violates that right.'"  Larsen v. Senate of the
Commonwealth of Pennsylvania, 154 F.3d 82, 87 (3d Cir. 1998)
(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1982)).

Defendants thus receive qualified immunity if "reasonable officials in [their] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful."  In re City of Philadelphia Litig., 49 F.3d 945, 961 n.14 (3d Cir. 1995) (quoting Good v. Dauphin County Social Serv., 891 F.2d 1087, 1092 (3d Cir. 1989)) (emphasis in City of Philadelphia).

### a.  Wood's First Amendment Claim

There is little doubt that the right of public employees to be free from retaliation for speech protected under the First Amendment is clearly established.  In 1968 the Supreme Court declared that a public employee's "exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment", Pickering v. Board of Education of Township High School Dist. 205, 391 U.S. 563, 574 (1968).  As we discussed above, the Supreme Court and our Court of Appeals have since Pickering defined the contours of this principle in many cases.  See, e.g., Connick v. Myers, 461 U.S. 138 (1983); Waters v. Churchill, 511 U.S. 661 (1994); Holder v. City of Allentown, 987 F.2d 188 (3d Cir. 1993).

In _Larsen_, our Court of Appeals considered the question of qualified immunity in the very context before us here, and it found that:

> In the context of a First Amendment
> retaliation claim, [the qualified immunity
> analysis] turns on an inquiry into whether
> officials reasonably could believe that
> their motivations were proper even when
> their motivations were in fact retaliatory.
> Even assuming that this could be
> demonstrated under a certain set of facts,
> it is an inquiry that cannot be conducted
> without factual determinations as to the
> officials' subjective beliefs and
> motivations, and thus cannot properly be
> resolved on the face of the pleadings, but
> rather can be resolved only after the
> plaintiff has had an opportunity to adduce
> evidence in support of the allegations that
> the true motive for the conduct was
> retaliation rather than the legitimate
> reason proffered by the defendants.

_Id._ 154 F.3d at 94. _Larsen_ is squarely on point, and thus we cannot dismiss this case on the basis of qualified immunity with respect to the First Amendment claims on the current record.

### b. **Wood's Fourteenth Amendment Claim**

Public employees who can only be fired for cause must receive a pre-termination hearing in which they receive "an explanation of the employer's evidence", and this has been clearly established in the _Loudermill_ line of cases. Though the

defendants argue that they reasonably believed the hearing they provided comported with _Loudermill_'s requirements, Wood alleges that during that hearing the defendants did not point to a single instance of misconduct. Taking the well-pled facts in Wood's complaint as true -- as we must at this juncture -- a reasonable employer would not have believed that such a hearing comported with the employee's Fourteenth Amendment rights as elucidated in _Loudermill_ and its later jurisprudence.

We are mindful that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery", _Larsen_, 154 F.3d at 87 (quoting _Mitchell v. Forsyth_, 472 U.S. 511, 526 (1985)). Here, Wood _has_ pled violations of her First and Fourteenth Amendment rights. Though discovery may demonstrate that the employees' conduct entitles them to qualified immunity, we cannot now make that determination.

### 3. The Complaint Includes Facts Sufficient To State A Plausible Claim For Punitive Relief

According to the defendants, Wood "failed to state any facts demonstrating intentional, willful, wanton or reckless conduct", Def. MTD at 22, sufficient to warrant punitive

damages.  Defendants contend that "[n]egative employment action, such as suspension or termination, is generally not considered to be particularly outrageous conduct".  Id.  Wood counters that the complaint includes facts demonstrating "a well orchestrated scheme to 'get' Plaintiff because she dared to utilize her First Amendment freedoms."  Pl. Resp. at 29.

In Smith v. Wade, 461 U.S. 30 (1983), the Supreme Court held that a defendant in a § 1983 action may be liable for punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Id. at 56.  As our Court of Appeals clarified, "for a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous", Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).

Here, Wood has alleged that defendants Williams and Klein fired her for speaking publicly about potential asbestos exposure in a public school.  Taking all of plaintiff's allegations as true, we find that Wood has stated a claim that defendants may have acted recklessly or callously such that she may be entitled to punitive damages, and we will not dismiss the

punitive damages claim at this stage.  Cf. Rankin v. City of
Philadelphia, 963 F. Supp. 463, 476 (E.D. Pa. 1997) (Brody, J.)
(defendants sued in their individual capacities did not
challenge plaintiff's potential entitlement to punitive damages
where the plaintiff alleged that "defendants fired him because
he refused to cover up health and safety violations he
discovered in the course of his employment" with a publicly-
funded nursing home).

### 4.  The § 1983 Claims Against All Institutional Defendants Fail to Meet the Monell Standard

Section 1983 does not impose respondeat superior
liability on municipal defendants.  Instead, a municipality is
liable under § 1983 only if its official policy or custom has
caused a deprivation of constitutional rights.  Monell v.
Department of Social Servs. of City of New York, 436 U.S. 658,
691-94 (1978); see also, e.g., Montgomery v. De Simone, 159 F.3d
120, 126 (3d Cir. 1998).

As our Court of Appeals explained in Andrews v. City
of Philadelphia, 895 F.2d 1469 (3d Cir. 2009), a plaintiff can
demonstrate a policy under Monell either by showing that "a
decisionmaker possessing final authority to establish municipal
policy with respect to the action [has] issue[d] an official

proclamation, policy, or edict," or that there is a custom

because "though not authorized by law, such practices of state

officials are so permanent[] and well-settled as to virtually

constitute law." Id. at 1480 (internal quotations and

alterations omitted). In either case, the plaintiff must

identify a specific decisionmaker or other state officials

responsible for the policy or custom. See McTernan v. City of

York, 564 F.3d 636, 658-59 (3d Cir. 2009) (upholding the

dismissal of plaintiff's § 1983 claim against a municipality

where the claim "fail[ed] to allege conduct by a municipal

decisionmaker" and finding that although the plaintiff

complained that municipal officers periodically engaged in

challenged conduct, "he does not plead knowledge of such

directives by a municipal decisionmaker, such as the Mayor or

Police Chief" nor was there any "allegation that either the

Mayor or the Police Chief were aware of, let alone directed" the

challenged conduct).

Here, Wood alleges that "it was the policy and/or

custom of the Defendants, or one or more of them, to

inadequately screen during the hiring process and to

inadequately train, retrain and/or supervise BAVTS employees,

including one or more of the Individual Defendants, thereby

failing to adequately discourage Constitutional violations . . . ." Comp. ¶ 62. She also "believes, and thus avers" that "the Institutional Defendants, or one [or] more of them, did not require or demand appropriate in-service training of BAVTS employees, who were known to encourage or tolerate Constitutional violations such as those suffered by Plaintiff Wood", id. at 63, and that "BAVTS employees, including the Individual Defendants, believed that their actions would not be properly monitored by supervisory officials, and the Constitutional violations of the rights of individuals . . . would not be investigated or sanctioned." Id. at ¶ 65.

Wood thus fails to allege conduct by a municipal decisionmaker. Furthermore, as McTernan counsels, "[t]o satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." McTernan, 564 F.3d at 658 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)). Wood has also failed to meet this standard.

We will thus dismiss the § 1983 claims against all institutional defendants as Wood's complaint does not satisfy the rigorous standards for stating a claim under Monell.

Our analysis here disposes of Count IV of the
complaint, and so we now turn to the remaining claims.

### C.   **Count II - Failure to Intervene**

In Count II Wood brings a claim of failure to
intervene against all individual defendants under § 1983.  She
alleges that "[t]he Defendants, or one or more of them, had a
duty to intervene to prevent the violations of Plaintiff Wood's
federally protected Constitutional rights," and that they failed
to intervene though they had a reasonable opportunity to do so.
Comp. ¶¶ 51, 53, 54.

In Smith v. Mensiger, 293 F.3d 641 (3d Cir. 2002), our
Court of Appeals held that a state actor may be liable for a
failure to intervene if he had a reasonable opportunity to
intervene to prevent a deprivation of constitutional rights and
refused to do so.  Id. at 650.  Defendants argue that "Wood does
not allege that any specific Individual Defendant took part in
her alleged deprivation of constitutional rights", or that "the
specific Individual Defendants had any knowledge of the alleged
violation."  Def. MTD at 11.  They contend that in order to
state a claim for liability under § 1983 for failure to
intervene, "it must be specifically alleged that a state actor

stood by as rights were violated and decided not to act, such that his silence constitutes endorsement." Id. at 12.

But, as we discussed above, the complaint does allege that Klein and Williams took part in the alleged deprivation of constitutional rights and that they failed to intervene to prevent such deprivation. We will thus deny defendants' motion to dismiss Count II with respect to Klein and Williams.

### D.   Count III - Supervisory Liability

Wood alleges that

the Supervisory Defendants . . . either directed the conduct which resulted in the violation of the Plaintiffs' [sic] federal rights as alleged; or, had actual knowledge of the subordinates [sic] violation of Plaintiffs' [sic] federal rights as alleged; or, had actual knowledge of the subordinates [sic] violation of Plaintiffs' [sic] rights and acquiesced in said violations; or, with deliberate indifference to the consequences, established and maintained a policy practice or custom which directly caused the violation . . . .

Comp. ¶ 58.

The defendants argue that Wood's supervisory liability claims must fail because, under Iqbal, "[i]n a § 1983 suit . . . where masters do not answer for the torts of their servants -- the term 'supervisory liability' is a misnomer. Absent

vicarious liability, each Government official . . . is only liable for his or her own misconduct."  Iqbal, 556 U.S. at 677.

Even before the Supreme Court decided Iqbal, our Court of Appeals made clear that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" and in the context of supervisory liability, "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but that such allegations "must be made with appropriate particularity."  Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  Wood's conclusory recitation of the elements of the supervisory liability offense fall far short of this particularity, and they do not constitute sufficient facts to state a plausible claim for relief.  We will thus dismiss Count III of Wood's complaint.

> ### E.    Count V -- Conspiracy to Violate Wood's Constitutional Rights In Violation of 42 U.S.C. § 1983___

Count V alleges a conspiracy by all individual defendants to violate Wood's constitutional rights under 42 U.S.C. § 1983.  Wood avers that "[t]he Defendants conspired to engage in the conduct alleged" in the complaint, and they "acted in concert, pursuant to an agreement, to cause the stated harms

or in some way facilitated the conspiratorial objective of inflicting the resulting harms". Comp. ¶ 69.

Defendants counter that in order to set forth a conspiracy claim a plaintiff must allege specific facts that show a mutual understanding or agreement between conspirators. Def. MTD at 16. As Judge Reed has explained, a plaintiff "must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire" to carry out the challenged conduct. Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). See also D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992).

Wood counters that she may offer circumstantial evidence of a conspiracy in order to state a claim and that direct evidence is not necessary. Pl. Resp. at 23 (quoting Hampton v. Hanrahan, 600 F.2d 600, 620-74 [sic] (7th Cir. 1979) for the proposition that a plaintiff is not required to provide direct evidence of the agreement between the conspirators and that "[c]ircumstantial evidence may provide adequate proof of conspiracy"). We agree that Wood need not offer direct evidence, but she must allege some evidence in the form of facts, which she has entirely failed to do. Because she has not

30

stated any facts which provide direct or circumstantial evidence of a plausible claim of conspiracy, we will dismiss Count V of Wood's complaint.

### F.    Count VI - Wrongful Termination

In Count VI Wood alleges that "the Institutional Defendants, or one or more of them, perceived her as a potential whistleblower under Pennsylvania law, including, <u>inter alia</u>, the Pennsylvania Right to Know Act, and therefore terminated her employment in order to silence her."  Comp. ¶ 72.  She continues, "her termination by the Defendants was motivated by a desire to retaliate against the Plaintiff simply because the Plaintiff spoke out about contaminants in her workplace."  <u>Id.</u> at ¶ 73.

The defendants argue that the complaint alleges that they "are liable for certain claims, <u>inter alia</u>," which "does not provide Defendants' [<u>sic</u>] with any notice as to the possible allegations that could proceed to trial."  Def. MTD at 19.  We do not read the complaint as alleging that <u>defendants</u> violated "Pennsylvania law, including, <u>inter alia</u>, the Pennsylvania Right to Know Act".  Instead, Wood appears to allege that defendants feared that she would make reports under these laws adverse to

their interests -- an allegation that provides them with sufficient notice.

Yet Wood's claim for wrongful discharge nevertheless fails.  The complaint alleges that Wood was covered by a collective bargaining agreement: "The Plaintiff, by virtue of the contract between her collective bargaining unit and BAVTS, had a reasonable expectation of continued employment with BAVTS."  Comp. ¶ 36.  Indeed, the due process aspect of Wood's Fourteenth Amendment claim depends on this very fact.  Moreover, the purported effort of the BAVTS to comply with Loudermill confirms that Wood was not an at-will employee, for Loudermill by its terms applies to "public employee[s] who can be discharged only for cause."  Loudermill, 470 U.S. at 535.

Wood's status as an employee covered by a collective bargaining agreement and dischargeable only for cause defeats her wrongful discharge claim.  As the Pennsylvania Superior Court held in Phillips v. Babcock & Wilcox, 503 A.2d 36 (Pa. Super. 1986),

> [B]ecause the wrongful discharge action in
> Pennsylvania was judicially created to
> protect otherwise unprotected employees from
> indiscriminate discharge and to provide
> unorganized workers a legal redress against
> improper actions by their employers . . . an
> action for the tort of wrongful discharge is

> available only when the employment
> relationship is at will.

Id. at 38.  Since Phillips was decided Pennsylvania courts and

the courts in our Circuit have consistently upheld this

principle.  See, e.g., Ross v. Montour R. Co., 516 A.2d 29, 32-

33 (Pa. Super. 1986); Harper v. American Red Cross Blood Serv.,

153 F. Supp. 2d 719, 721 (E.D. Pa. 2001) (Joyner, J.); Coppola

v. Jneso-Pocono Med. Center, 400 Fed. Appx. 683, 684-85 (3d.

Cir. 2010).

Because Wood was working under a collective bargaining

agreement and was not an at-will employee, she cannot maintain a

wrongful discharge action, and so we will dismiss this count of

her complaint under Fed. R. Civ. P. 12(b)(6).

Though defendants did not raise this ground in their

motion to dismiss, the parties do not dispute that Wood's

employment was terminable only for cause.  See, e.g., Goodwin v.

Castille, 465 Fed. Appx. 157, 163 (3d Cir. 2012) ("We have noted

that sua sponte dismissal under Rule 12(b)(6) is proper after

service of process, but that it should be exercised with caution

to ensure that the decision to dismiss is an informed one.")

(internal citations omitted); Bryson v. Brand Insulations, Inc.,

621 F.2d 556, 559 (3d Cir. 1980) ("[t]he district court may on

its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action", that is, if "no set of facts could be adduced to support the plaintiff's claim for relief") (internal citations omitted).

### G. Count VII - Intentional Infliction of Emotional Distress

Wood alleges that the "extreme and outrageous conduct, acts or omissions of the Defendants, or one or more of them, were calculated, designed, and intended by the Defendants to intentionally inflict deliberate emotional distress, psychological trauma, and psychic pain[] and suffering upon Plaintiff Wood." Comp. ¶ 79.

In Pennsylvania, a defendant will only be liable for intentional infliction of emotional distress if he has engaged in conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Field v. Philadelphia Elec. Co., 388 Pa.Super. 400, 427 (Pa. Super. Ct. 1989). In Hoy v. Angelone, 554 Pa. 134 (Pa. 1998), the Pennsylvania Supreme Court offered examples of the "egregious conduct" that would rise to this

level, including the actions of a defendant who, "after striking and killing plaintiff's son with [his] automobile, and after failing to notify authorities or seek medical assistance, buried [the] body in a field" rather than returning it to his parents, and of a defendant physician who, knowing the information was untrue, issued a press release that his patient suffered from a fatal disease. Id. at 151-52 (citing, respectively, Papieves v. Lawrence, 437 Pa. 373 (1970) and Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979)).

Wood has alleged no conduct that comes close to meeting this exacting standard. We will thus dismiss Count VII of the complaint.

## H. Count VIII - Civil Conspiracy

Count VIII alleges that all defendants conspired to engage in the state claims alleged in Counts VI and VII.[2] The defendants argue that a claim of civil conspiracy requires an underlying tort as a predicate act for liability, Def. MTD at 18

---

[2] We note that in the complaint Wood erroneously labels Count VIII as Count VII (after already labeling her intentional infliction of emotional distress claim Count VII) and she avers that the conspiracy she alleges concerns Counts V and VI, Comp. ¶ 83, but because she also says it concerns "the tortuous [sic] state claims", id. -- which she alleged in Counts VI and VII --

(citing <u>General Refractories Co. v. Fireman's Fund Ins. Co.</u>, 337
F.3d 297, 313 (3d Cir. 2003)[3]), and because Wood has failed to
state a claim for wrongful discharge or intentional infliction
of emotional distress, she cannot sustain a claim of civil
conspiracy.  We agree.

As our Court of Appeals has noted, "[t]he established
rule is that a cause of action for civil conspiracy requires a
separate underlying tort as a predicate for liability."  <u>In re
Orthopedic Bone Screw Prod. Liab. Litig.</u>, 193 F.3d 781, 789 (3d
Cir. 1999).  <u>See also</u> <u>Glass v. City of Philadelphia</u>, 455 F.
Supp. 2d 302, 359 (E.D. Pa. 2006) (Robreno, J.) ("Unlike in the
criminal conspiracy context, where the crime lies in the
agreement itself, a cause of action for civil conspiracy
requires a distinct underlying tort as a predicate to
liability").  Thus, "one cannot sue a group of defendants for
conspiring to engage in conduct that would not be actionable

---

we interpret Count VIII as a claim of conspiracy to commit the
allegations in Counts VI and VII.
    [3] Defendants quote <u>General Refractories</u> as including
the phrase "a separate underlying tort as a predicate for
liability", Def. MTD at 18, which the case does not say.  We
remind defense counsel of their obligation of candor to the
tribunal under Pennsylvania Rule of Professional Conduct 3.3,
and we trust that they will avoid such errors in the future.

against an individual defendant." <u>Orthopedic Bone Screw</u>, 193 F.3d at 789.

Because Wood has failed to make sufficient allegations to support the state tort law claims she seeks to bring in Counts VI and VII, she also cannot state a claim for civil conspiracy to commit those torts. We will thus dismiss Count VIII.

## IV.  **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is granted with respect to Counts III, IV, V, VI, VII, and VIII, and with respect to defendants Dr. Irene Gavin, John Haney, Sharon Stack, Bethlehem Area Vocational-Technical School, Bethlehem Area Vocational-Technical School Authority, the Bethlehem Area School District, the Northampton Area School District, the Saucon Valley School District, and John/Jane Does 1-X.

The motion is denied with respect to Counts I and II and with respect to defendants Brian Williams and Sandra Klein.

BY THE COURT:

<u>/S/ STEWART DALZELL, J.</u>

37